UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

| | | |
|---|---|---|
| ANTONIO DURAN, | : | |
| Petitioner, | : | **REPORT AND RECOMMENDATION** |
| -against- | : | **TO THE HONORABLE LAURA TAYLOR SWAIN** |
| WILLIAM PHILLIPS, | : | |
| Superintendent, Green Haven Correctional Facility, | : | 04 Civ. 302 (LTS)(FM) |
| Respondent. | : | |

------------------------------------------------------------x

**FRANK MAAS**, United States Magistrate Judge.

I.     Introduction

        Petitioner Antonio Duran ("Duran") brings this pro se habeas corpus proceeding pursuant to 28 U.S.C. § 2254 ("Section 2254") to challenge his conviction, on one count each of Murder in the Second Degree and Attempted Murder in the Second Degree, following a jury trial in Supreme Court, Bronx County. (Pet. ¶¶ 1, 4, 6, 9). On February 9, 1999, Justice Steven L. Barrett, before whom the case was tried, sentenced Duran to prison terms which, in the aggregate, amounted to an indeterminate sentence of thirty-seven and one-half years to life. (Id. ¶ 3; Aff. of Ass't Dist. Att'y Jason S. Whitehead, sworn to on July 11, 2007 ("Whitehead Aff."), ¶ 6).

        For the reasons that follow, Duran's petition should be denied. Additionally, pursuant to 28 U.S.C. § 2253(c)(2), Duran should be denied a certificate of

appealability because he has failed to make a substantial showing of the denial of a constitutional right.

II.     Background

   A.    Duran's Crimes

   Viewed in the light most favorable to the prosecution, the evidence established as follows:

   Victor Cuenca ("Victor") owned a barbershop located at 5611 Broadway in the Bronx. (Trial Tr. ("T.") 505). On Sundays, he and his brother typically went there to clean the floors; afterwards friends would join them to play poker. (Id. at 507-08, 520). Victor went to the shop on Sunday, April 21, 1996, at 10:00 a.m. (Id. at 507). Victor's brother, Sergio Cuenca ("Sergio"), was already there. (Id. at 508). The barbershop typically kept at least two hundred dollars on hand for change. (Id. at 519). That morning, Sergio also had one thousand dollars of his own on his person. (Id.).

   At about 10:30 a.m., while Victor was running an errand away from the shop, Duran arrived. (Id. at 253, 510-12). Inside the shop, Duran shot Sergio twice in the chest. (Id. at 207-09, 253-57, 450). When Victor returned, Duran also shot him in the head and back before throwing down the murder weapon – a .38 caliber revolver – and fleeing the scene. (Id. at 239, 330, 411-15, 450, 514). Sergio died shortly thereafter. (Id. at 255-57). Victor was hospitalized for over a month, but survived. (Id. at 515-16).

The police arrested Duran shortly after the incident following an eyewitness' identification of him. (Id. at 350-52, 376-80). Two rounds of .38 caliber ammunition were recovered from his pocket. (Id. at 358-59). Additionally, in post-arrest interviews, Duran admitted shooting both brothers, but attempted to characterize his actions as self-defense. (Id. at 450).

B. Voir Dire

On January 4, 1999, before jury selection began, Justice Barrett asked whether Duran would waive his right under People v. Antommarchi, 80 N.Y.2d 247 (1992), to be present at sidebar conferences with prospective jurors. (Pretrial Hearing Tr. ("H.") 110-12). The transcript reflects the inquiry, but not an explicit waiver of Duran's Antommarchi rights.[1] (Id.).

---

[1] The entire exchange was as follows:

THE COURT: You wish the defendant to be present or does he wish to waive his right to be present at side bar conferences?

MR. CARROZZA: I'm going to take that up with him now.

THE COURT: Would you?

MR. CARROZZA: I will advise him that he should, for reasons known to the people who practice, that he should not avail himself of that opportunity.

THE COURT: So you understand the practice in this court, I will take the – during jury selection I will not separately screen the jury. The clerk will call the names of jurors out and let them approach the bench, meaning right over here. I have indicated at the side of the Court bench with counsel present and the record present and

(continued...)

Once jury selection began, Justice Barrett explained to potential jurors that they could request sidebar conferences to preserve their privacy. (Voir Dire Tr. ("V.") 25-28, 31). When potential jurors were called to fill the jury box, some approached the bench to proffer reasons why they could not serve as jurors. (Id. at 31-57). Duran complains that his rights were violated when one such juror approached the bench. The entire voir dire discussion regarding that juror was as follows:

> COURT CLERK: Alex Micolla.
>
> PROSPECTIVE JUROR: Hello, I'm a New York City Police Officer.
>
> THE COURT: Consent?
>
> MR. CARROZZA: Consent.
>
> [ASSISTANT DISTRICT ATTORNEY]: Consent.
>
> THE COURT: By consent, you're excused, sir.

---

[1](...continued)
> explain why they should not serve. The defendant may be standing there if he wishes with counsel or he may elect to remain in his seat.
>
> If he does proceed to side bar, he will be escorted by court officers. He may exercise his right individually or he may exercise his right in all instances, it's up to him and up to you.
>
> You also will have an opportunity, if he wishes to remain seated, to consult with him.
>
> MR. CARROZZA: Thank you, Judge.

(H. 110-12).

4

(Id. at 58-59). Duran claims that this discussion took place outside his presence at the sidebar and that "his input could have affected his counsel's discretionary choice to consent to the dismissal of the potential juror."[2] (Pet. ¶ 16).

After Officer Micolla was excused, the court completed the voir dire, a jury was chosen, and the trial commenced. (V. 59-323).

### C. Conviction and Sentencing

At the conclusion of the trial, after brief deliberations, the jury found Duran guilty of Murder in the Second Degree and Attempted Murder in the Second Degree. (T. 724). On February 9, 2001, Justice Barrett sentenced Duran to consecutive indeterminate prison terms of twenty-five years to life on the Murder in the Second Degree count and twelve and one-half to twenty-five years on the Attempted Murder in the Second Degree count. (Pet. ¶¶ 2-3).

### D. Direct Appeal

Duran appealed his conviction to the Appellate Division, First Department. (Whitehead Aff. ¶ 7). In his brief, Duran argued that (a) he was denied his right to be present during a material stage of the trial because Officer Micolla was questioned in his absence and (b) the sentence imposed was unduly harsh. (Id.).

---

[2] The petition does not specify which "prospective juror" allegedly was questioned improperly outside Duran's presence. Nevertheless, Officer Micolla was the only individual mentioned in Duran's brief on appeal. (See Whitehead Aff. Ex. 1 at 19-24). Additionally, although the voir dire transcript does not establish that Officer Micolla was questioned at the sidebar, the respondent does not dispute that assertion, which I therefore have assumed is correct for purposes of this Report and Recommendation.

The People then filed a motion to expand the record on appeal to include an affirmation by Duran's trial counsel which stated that Duran had, in fact, waived his Antommarchi right to be present at voir dire sidebar conversations with prospective jurors. (Id. ¶ 8 & Ex. 4). The Appellate Division granted this application on June 7, 2001.[3] (Id. Ex. 6). Thereafter, on September 18, 2001, the court unanimously affirmed Duran's conviction, stating that Duran's right-to-be-present claim was unreviewable because the record did not establish his exclusion from the sidebar conference.[4] People v. Duran, 286 A.D.2d 612, 612 (1st Dep't 2001). Additionally, the court held that the record (which included defense counsel's affirmation) established that Duran waived his right to attend sidebar conferences and that he "could not have made a meaningful contribution to the discussion" in any event. Id. at 612. Curiously, the court did not address Duran's claim that his sentence was unduly harsh. Id.

By letter dated October 5, 2001, Duran's appointed counsel sought leave to appeal to the Court of Appeals, asking that the court "consider and review all issues outlined" in Duran's brief before the Appellate Division. (Whitehead Aff. Ex. 11). In a subsequent letter, addressed to Judge Richard C. Wesley, counsel discussed "two Antommarchi issues worthy of review," but did not again mention Duran's claim that his

---

[3] In its order, the Appellate Division mistakenly stated that Duran had filed the motion to enlarge the record. The court corrected this error on August 2, 2001. (Whitehead Aff. Ex. 9).

[4] See supra note 2.

sentence was unduly harsh. (Id. Ex. 12). On November 27, 2001, Judge Wesley denied Duran's leave application. See People v. Duran, 97 N.Y.2d 655 (2001). Duran did not subsequently file a petition for a writ of certiorari. (Whitehead Aff. ¶ 17; see Pet. ¶ 9).

E. Coram Nobis

On August 21, 2002, proceeding pro se, Duran filed an application for a writ of error coram nobis with the Appellate Division. (Whitehead Aff. ¶ 18 & Ex. 15). Duran alleged that his appellate counsel was ineffective because she allegedly had failed "to raise [the issue that] the imposition of consecutive sentence[s was] excessive." (Id. Ex. 15 at 5). On May 6, 2003, the Appellate Division summarily denied Duran's coram nobis application. People v. Duran, 305 A.D.2d 1126 (1st Dep't 2003) (table). On July 18, 2003, the Court of Appeals denied Duran's request for leave to appeal the Appellate Division's order. (Whitehead Aff. ¶ 21 & Ex. 18).

F. Habeas Petition

Duran's habeas petition is dated November 17, 2003, and was timely received by the Pro Se Office of this Court on January 14, 2004. (See Docket No. 1). In his petition, Duran claims that (a) his Fourteenth Amendment due process rights were violated when he was excluded from the sidebar involving prospective juror Micolla, and (b) his Sixth Amendment right to the effective assistance of counsel was violated by his appellate lawyer's failure to argue in her submission to the Court of Appeals that his sentence was unduly harsh. (See Pet. ¶¶ 11-22).

7

III.  Discussion

   A.  Standard of Review

A habeas corpus petition is not a vehicle to relitigate every issue previously determined in state court. Herrera v. Collins, 506 U.S. 390, 401 (1993). Instead, a state prisoner seeking habeas relief under Section 2254 must show by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petitioner thus has the burden of proving, by a preponderance of the evidence, that his rights have been violated. See Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997).

Section 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides, in part, that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
>    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

28 U.S.C. § 2254(d)(1) (emphasis added).

As the Second Circuit noted in Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000), the Supreme Court has "construed the amended statute so as to give independent meaning to 'contrary [to]' and 'unreasonable.'" "Under the 'contrary to' clause, a federal

habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). Under the "unreasonable application" clause, a federal habeas court should "ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. This standard does not require that reasonable jurists would all agree that the state court was wrong. Id. at 409-10. Rather, the standard "falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists.'" Stinson, 229 F.3d at 119 (quoting Francis S. v. Stone, 221 F.3d 100, 109 (2d Cir. 2000)).

Section 2254(d)(2) also authorizes the federal courts to grant a habeas writ when a claim considered on the merits in state court "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Finally, to the extent that a habeas petition challenges factual findings, Section 2254(e)(1) provides that "a determination of a factual issue by a State court shall be presumed to be correct" and "[t]he [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

9

"If, after carefully weighing all the reasons for accepting a state court's judgment, a federal court is convinced that a prisoner's custody . . . violates the Constitution, that independent judgment should prevail."  Williams, 529 U.S. at 389.

  B. Antommarchi Claim

Duran's first claim is that his Fourteenth Amendment due process rights were violated when he was not permitted to be present during the sidebar conference with prospective juror Micolla.  As set forth below, the respondent's argument that this claim has been procedurally defaulted lacks a factual basis.  Nevertheless, Duran is not entitled to relief on this ground.

    1. Procedural Default

A federal court is precluded from reviewing a habeas petitioner's claim if the state court's prior denial of that claim rested on an adequate and independent state ground.  See, e.g., Harris v. Reed, 489 U.S. 255, 262 (1989); Wainwright v. Sykes, 433 U.S. 72, 81 (1971).  A procedural default qualifies as such an adequate and independent state ground, Harris, 489 U.S. at 262, unless the petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law, or . . . that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991); Glenn v. Bartlett, 98 F.3d 721, 724 (2d Cir. 1996); accord Fama v. Comm'r of Corr. Servs., 235 F.3d 804, 809 (2d Cir. 2000).  Further, when a state court relies on a state procedural bar, the petitioner is precluded

10

from seeking habeas relief even though the state court has ruled in the alternative on the merits of his federal claim. Glenn, 98 F.3d at 724. In determining whether a claim may be heard, however, courts "apply a presumption against finding a state procedural bar and 'ask not what we think the state court actually might have intended but whether the state court plainly stated its intention.'" Galarza v. Keane, 252 F.3d 630, 637 (2d Cir. 2001) (quoting Stinson, 229 F.3d at 118).

> In its decision, the Appellate Division observed that Duran's:
>
> claim that his right to be present during jury selection was violated [was] unreviewable because the record does not establish [his] exclusion from the proceeding at issue. On the contrary, a fair reading of the record indicates that the events at issue transpired in open court rather than at sidebar.

Duran, 286 A.D.2d at 612 (citation omitted). The respondent argues that the ruling "constituted an independent state law ground" because the Appellate Division's rejection of petitioner's claim was based solely on his procedural failure to make an adequate record. (Resp't's Mem. at 10). However, the state court does not appear to have used the term "unreviewable" as a synonym for the term "unpreserved." Rather, the court seems to have used the term "unreviewable" to signal that the record lacked factual support for Duran's lack-of-presence claim. Indeed, in both the sentence employing the word "unreviewable" and the very next sentence the court actually analyzes the record, concluding that the conference with prospective juror Micolla "transpired in open court rather than at sidebar." Duran, 286 A.D.2d at 612. The Appellate Division therefore was

11

apparently reviewing the merits of Duran's claim, not relying on a procedural bar as a basis for its rejection.[5]

Accordingly, Duran's right-to-be-present claim is not procedurally defaulted.

2. Merits

a. No Federal Right to Be Present at Sidebar Voir Dire

Although Duran's appellate brief contains a handful of citations to the Fourteenth Amendment to the United States Constitution, (see Whitehead Aff. Ex. 1 at 13, 24), his actual argument before the Appellate Division with respect to his alleged exclusion from a sidebar conference during voir dire relied exclusively on "the rule announced by the New York Court of Appeals in People v. Antommarchi." Diaz v. Herbert, 317 F. Supp. 2d 462, 473 (S.D.N.Y. 2004). "In Antommarchi, the Court of Appeals held that a criminal defendant has a right to be present during a sidebar voir dire of a potential juror when the questioning pertains to the potential juror's background, i.e., matters that touch upon the ability to objectively weigh the evidence." Id. However, "[s]ubsequent decisions of the New York Court of Appeals make clear that the Antommarchi rule is not a result of federal constitutional or statutory mandate, but rather, is grounded" in state law. Id.

---

[5] Any doubt in this regard must be resolved in Duran's favor. Otherwise, if this Court were to decide that the state court employed the word "unreviewable" to mean "unpreserved," it would be deciding "what we think the state court . . . might have" meant, precisely the approach the Second Circuit cautioned against in Galarza and Stinson.

In this forum, the only issue is whether Duran's <u>federal</u> rights were violated. 28 U.S.C. § 2254(d)(1); see <u>Diaz</u>, 317 F. Supp. 2d at 473. Duran consequently can prevail only if the Appellate Division's decision resulted in a decision that was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).

Under federal law, a criminal defendant "has a right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings." <u>Faretta v. California</u>, 422 U.S. 806, 819 n.15 (1975). "The empaneling of a jury is a material stage of a trial that requires the defendant's presence." <u>Diaz</u>, 317 F. Supp. 2d at 473 (citing <u>Norde v. Keane</u>, 294 F.3d 401, 411 (2d Cir. 2002)). Nevertheless, "the right to be present is not absolute: it is triggered only when the defendant's 'presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.'" <u>Cohen v. Senkowski</u>, 290 F.3d 485, 489 (2d Cir. 2002) (quoting <u>Snyder v. Massachusetts</u>, 291 U.S. 97, 105-06 (1934)). Accordingly, "there is not now and never has been a right guaranteed in the federal Constitution that a defendant be present at sidebar <u>voir dire</u>." <u>Zaire v. Mitchell</u>, No. 93 Civ. 6626 (MBM), 1996 WL 82391, at *3 (S.D.N.Y. Feb. 27, 1996).

13

### b. Any Error Was Harmless

Moreover, even if Duran had a constitutional right to be present during the Micolla sidebar, his exclusion would have been harmless. A denial of a defendant's right to be present at all material stages of a trial is reviewed for harmless error. United States v. Evans, 352 F.3d 65, 68-69 (2d Cir. 2003). Where, as here, a state appellate court does not review an alleged error for harmlessness, the applicable harmless-error standard is that set forth by the Supreme Court in Brecht v. Abrahamson, 507 U.S. 619 (1993). See Fry v. Pliler, 127 S. Ct. 2321, 2328 (2007) (federal court "must assess the prejudicial impact of constitutional error in a state-court criminal trial under the [Brecht standard], whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in [Chapman v. California, 386 U.S. 18, 24 (1967)]"). Accordingly, Duran is not entitled to relief unless the alleged failure to let him participate in the proceedings at the sidebar had a "substantial and injurious effect or influence in determining the jury's verdict." Mingo v. Artuz, 174 F.3d 73, 78 (2d Cir. 1999) (quoting Brecht, 507 U.S. at 637).

In this case, Duran cannot possibly meet this threshold. Among other things, (a) Duran was present in court throughout the voir dire process, (b) Duran's attorney participated in the sidebar conference, (c) Duran was able to consult with his attorney concerning the sidebars, (d) it is highly unlikely that Duran would have wanted to retain a New York City police officer as a juror in his homicide case, (e) Officer

14

Micolla was in fact excused, and (f) there is no suggestion that Duran was deprived of a fair trial before an impartial jury. In these circumstances, the error, if any, in excluding Duran from the sidebar clearly would have been harmless. See Sanchez v. Duncan, 282 F.3d 78, 82-83 (2d Cir. 2002) (finding any error harmless because the defendant was present in the courtroom for the entire jury selection process and none of the prospective jurors who attended bench conferences served on the jury); United States v. Feliciano, 223 F.3d 102, 111-12 (2d Cir. 2000) (finding error harmless because the defendants were present in the courtroom for the entire jury selection process and defense counsel participated in the sidebars even though two of the jurors questioned outside the defendant's presence were selected to serve on the jury).

        c.        Waiver of Right to Be Present

Finally, even if Duran had a federal constitutional right to be present at the sidebar during jury selection, that right would plainly be subject to waiver, so long as his waiver was knowing and voluntary. Cohen, 290 F.3d at 491. Here, Duran's trial lawyer has expressly affirmed that "Duran waived his right to be present at . . . side-bar discussions," (Whitehead Aff. Ex. 4), and Duran has never disputed that statement. Moreover, quite apart from counsel's affirmation, the record strongly suggests that Duran waived his right to be present. Indeed, it is undisputed that Justice Barrett instructed Duran that he could "exercise his right" to participate in each individual sidebar conference or "elect to remain in his seat." (H. 111-12). Thereafter, despite that

15

invitation, Duran made no effort to participate in the Micolla sidebar. As the Second Circuit has held, "[w]hen a defendant is fully apprised of the nature of the pre-screening procedure, makes no objection to the procedure, and has counsel present for the duration of the prescreening, a knowing waiver of the right to be present occurs." Cohen, 290 F.3d at 492.

Duran therefore cannot show, much less establish through clear and convincing evidence, that the Appellate Division's conclusion that he had validly waived his right to be present at sidebar conferences was erroneous.

    C.    <u>Ineffective Assistance of Appellate Counsel Claim</u>

Duran's only other claim is that his appellate counsel's legal assistance was so inept as to deprive him of his Sixth Amendment rights. In order to prevail on an ineffective assistance of counsel claim, a habeas petitioner must demonstrate that his counsel's performance (a) "fell below an objective standard of reasonableness" and (b) that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). The Strickland standard applies not only to trial counsel, but also to an attorney handling a defendant's appeal <u>as of right</u>. Evitts v. Lucey, 469 U.S. 387, 395-96 (1985); Aparicio v. Artuz, 269 F.3d 78, 95 (2d Cir. 2001). The "test imposes a heavy burden on defendants who assert a claim of ineffective assistance of counsel," Diaz, 317 F. Supp. 2d at 471, which "is designed 'to deter a baseless attack on the

16

performance of counsel in a last-ditch effort to avoid a conviction or reduce the sentence,'" id. (quoting Percan v. United States, 294 F. Supp. 2d 505, 511 (S.D.N.Y. 2003)).

Duran claims that his appellate counsel was ineffective in failing to raise his excessive sentence claim in his applications for leave to appeal. (Pet. ¶ 18). As he explains, had his counsel raised that issue, the Court of Appeals could have "modifi[ed] his sentence." (Id.). This claim is wrong on both the law and the facts.

At the outset, the Supreme Court has held in Evitts that a criminal defendant's right to counsel extends only to a first appeal as of right. See Chalk v. Kuhlmann, 311 F.3d 525, 528 (2d Cir. 2002) (citing Evitts, 469 U.S. at 394). Duran's appeal to the New York Court of Appeals was a matter of discretion, not right. See N.Y. Crim. Proc. Law § 460.20(4). He consequently did not have a constitutional right to counsel with respect to such a discretionary appeal. Wainwright v. Torna, 455 U.S. 586, 587-88 (1982); Ross v. Moffitt, 417 U.S. 600, 610-11 (1974). It follows that Duran would not have a viable ineffective assistance of counsel claim even if his counsel failed to bring his sentencing claim to the attention of the Court of Appeals. See DiGuglielmo v. Smith, 366 F.3d 130, 135 (2d Cir. 2004); Chalk, 311 F.3d at 528-29; see also Hernandez v. Greiner, 414 F.3d 266, 270-71 (2d Cir. 2005) (requiring counsel on a second-level appeal after leave to appeal has been granted would be a "new rule" within

the meaning of Teague v. Lane, 489 U.S. 288, 299-301 (1989), which cannot be applied to grant habeas relief).

Furthermore, Duran's appellate counsel did raise his sentencing claim issue before the Court of Appeals. While she did not mention the excessive sentence claim in her second letter to the Court of Appeals, her initial leave letter requested that the court "consider and review all issues outlined" in Duran's brief before the Appellate Division. (Whitehead Aff. Ex. 11). This included the claim that the sentence imposed on Duran was unduly harsh. (Id. Ex. 1). There consequently is no factual basis for Duran's ineffective assistance claim. See Davis v. Strack, 270 F.3d 111, 123 (2d Cir. 2001).

Additionally, even if counsel had decided not to incorporate Duran's excessive sentence claim in her letter seeking leave to appeal, Duran would not be able to make out a meritorious ineffective assistance of counsel claim. Under Strickland, counsel does not have a duty to advance every nonfrivolous argument and is permitted to make a strategic decision to only advance those claims having the greatest merit. Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994). Here, Duran sought a reduction in his sentence in the interest of justice because he had expressed remorse about the killings and was a first time criminal offender. Although this argument could be considered by the Appellate Division, the New York Court of Appeals does not have the power to modify a legal sentence in the interest of justice. People v. Discala, 45 N.Y.2d 38, 44 (1978) ("it is the Appellate Division, and not [the Court of Appeals], which is authorized to reduce a

sentence in the exercise of its discretion and in the interest of justice") (citing N.Y. Crim. Proc. Law §§ 470.15(6)(b), 470.20(6)). Duran therefore cannot establish that his lawyer's decision not to emphasize his lack-of-presence claim was an error of such magnitude as to violate his right to effective assistance of counsel.

Finally, because Duran's sentence was authorized by state statute, see N.Y. Penal Law §§ 70.00, 70.02, any excessive sentence claim that he might seek to pursue before this Court could not provide a basis for habeas relief. White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992).

IV.     Conclusion

For the foregoing reasons, Duran's habeas petition should be denied. Moreover, because Duran has not made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253(c)(2), a certificate of appealability should not be issued.

V.      Notice of Procedure for Filing of
        Objections to this Report and Recommendation

The parties are hereby directed that if they have any objections to this Report and Recommendation, they must, within ten days from today, make them in writing, file them with the Clerk of the Court, and send copies to the chambers of the Honorable Laura Taylor Swain, United States District Judge, United States Courthouse, 500 Pearl Street, New York, New York 10007, to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any

opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Swain. The failure to file timely objections will result in a waiver of those objections for purposes of appeal. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

Dated:   New York, New York
         January 31, 2008

                                                    /s/ Frank Maas
                                                    FRANK MAAS
                                                    United States Magistrate Judge

Copies to:

Antonio Duran
#99-A-1237
Green Haven Correctional Facility
P.O. Box 4000
Stormville, New York 12582

Jason S. Whitehead, Esq.
Assistant District Attorney
Bronx County District Attorney
Fax: (718) 590-6523